We have three argued cases this morning. The first is number 251140 Island Creek Associates versus United States. Ms. Potroff. May you please the court? Good morning. Excuse me. We're here today to talk about, you know, a subject that has been covered many times, but the facts here are brand new. This is about standing and it is about a area of standing that there is a very concerning and massively impactful loophole in the current jurisprudence. What we're dealing with is a situation where once an offeror gets awarded an IDIQ contract, the question then is, you know, when would they have standing to challenge various violations? And the violations here are of the utmost importance. We're talking... You originally relied on the panel decision and the recipient. We granted in-bank review. We came out differently. The recipient sort of dooms your case, doesn't it? I actually don't think it does at all. The recipient is about subcontractor standing and that's just dramatically different. And of course, if the recipient had been decided the way the initial court had decided it, I would be relying on it. It was a very, very wide net. It would encompass a lot of different situations, including some of prime contractors, some of subcontractors. But I don't disagree with the on-bank decision and the recipient. I think that it's a very question when we're talking about impacts to a contract on a removed subcontractor. Here we are talking about a contract awardee, an actual offeror, and one that identified a very, very troublesome OCI, has brought it to the court's attention, has alleged violation of multiple regulations, both SBA, the FAR, and has pointed to specific agency actions in changing the contract terms after the initial awards were made. So it's really far more akin to a pre-award scenario. Counselor, explain to me why this isn't a case involving mootness. It seems to me that four counts of your complaint were addressing and seeking. Your prayer for relief was corrective action, right, on behalf of the government. And you got that. The Navy amended its regulation, and it seems to me that the basis for your complaint disappeared. It's moot. Your Honor, I disagree. I feel that there is a very intense possible harm in determining something like this to be moot, because we still have a contract that is active. You're asking me to speculate. Oh, not at all. We have a contract that is active until 2029, January of 2029, and we have tons of awardees. We still have a scenario where a corrective action was taken on paper, and as you can see from our brief, we do not feel that that corrective action made right the wrongs here. How did it not make right the wrongs? Well, there's still been awards made since that time based on the improper definition of affiliate. And I guess it's a proper definition, actually, under SBA's rules. Is that in the record? I mean, it's in our briefs. We've alleged that there have been awards made since that time. Oh, but there's no support for that in the record, right? I could find it for you if you'd like me to. I'd be interested if you could show me where in the records there's support for that. Sure, sure. And I mean, I just would like to add to that that we are also still dealing with a situation where, I mean, the OCI should not just be ignored. The OCI has significant impact on competition here. And writing that wrong, there is a whole lot of gray area in between having absolutely nothing that we can do here, it's moot, it's over with, and going back and changing years and years of contract awards. We're still dealing with a situation where, I mean, Seaport has been the literal Wild Wild West, where the agency has made changes to the solicitation to the contract underlying IDIQ that just wouldn't stand anywhere else. Awards have been made to non-contract holders. I absolutely have. But let's divide this conversation into two. And the one that I'm interested in you addressing has to deal with the OCI. You no longer have a case. There's no longer a case or controversy involving your OCI accounts. Am I correct? I mean, so again, Your Honor, we have alleged in our briefs and have seen plenty of involvement beyond the point in time that the OCI was allegedly corrected. My client had direct interaction on small business roundtables and all kinds of things, which is in our briefs. The modification that you complained about has been canceled. Is that right? It was changed in part on paper, but it was not entirely changed. So if it was changed and it no longer exists, the problem that you were complaining about, that's been modified to where it no longer exists, then would you say that the accounts related to OCI are moot? I wouldn't. You know, we still that those modifications were made in favoring the OCI. We have an interesting timeline here as well, where the changes made to allow awards to non-contract holders, large businesses, basically anybody, if they fell under SBA's affiliation definition, which it was SBA's definition, although they neglected to apply the fact that it would make the awardees ineligible, that was made at the same time that this alleged OCI, that this precise company became large. Can you focus for a moment on the relief you're seeking and tell us what part of the relief, in your view, is not moot? So there are still terms of the contract that we do not think were fixed. We do not think that the corrective action fixed at all. The, again, just general definition of affiliate, the fact that they are still making awards to these affiliates, it is our position that although they removed some of the language that just allowed. What is the relief that you're still seeking that a court could grant? Right. So we believe there needs to be an investigation of the OCI. There has yet to be a thorough investigation of the OCI. Multiple awards, lots of money was given to a company under that OCI. Awards, I think you mean task orders? Task order awards, yes. And isn't there a separate statutory bar for you challenging task order? Right. And we're not challenging any individual one. Again, we are alleging that the underlying IDIQ was modified to make multiple task orders. Okay. So I'm not challenging the task orders. It was the actual modification of the IDIQ that allowed those awards. That is what the issue is. And, Your Honor, I understand— So if we were to conclude that you haven't established the awards are still being made under the improper, in your view, OCI standard, then the case is moot. No, I don't think it is moot, Your Honor. Even if they're not making awards? I still don't think it is, Your Honor. I still think— I don't understand that. What's the theory? Yeah. I mean, I don't think that anything has officially and actually been corrected here. I don't think that allowing an agency to say, oh, you've identified a really, really severe OCI here, somebody is no longer officially under that title. Well, again, we know that person is still very much involved in this procurement, without a doubt. And I don't think that there's—it would establish a very dangerous precedent to say that removing that person from that position on paper makes everything fine. I'm not challenging those awards. I'm not saying we can go back and undo who performed them or anything like that. There is yet to be an investigation. I would still say that this company should not be allowed to be on this IDIQ. And that might be bold here, but we're talking about a company that received millions of dollars in awards improperly. You started off by saying there's some loophole. What's the loophole you're referring to? Yeah. And the massive loophole to me right now is one that I think the initial decision in-precipient was trying to reach and I think maybe overstepped a bit. It's the fact that once you are on an IDIQ contract currently, if you got that award, there are multiple courts that have held. That's it. You're no longer an actual offerer once you've received award of an IDIQ. It's not pre-award at that point. You've been awarded absolutely what you applied for, correct? But your honor, but when we're talking about— But still, I interrupted you. What's the loophole? Is that it? Just that you're no longer considered an offerer once you become an awardee? Well, the loophole to me is the very concerning fact that you could be an awardee on an IDIQ and you could never make a dollar. In fact, Weeks Marine, which is— That's not a loophole. That's how procurement works, right? I'm sorry. I'm trying to get there. To me, it's the fact that you could never be awarded a dollar. You could be seeing an unfair competition unfold in front of your eyes. You could be watching an OCI exist, watch awards being handed from a husband to a wife, and yet not be able to have this court's review of that. And based on standing, based on prejudice, economic harm, yet all of those things— I mean, there are thousands of these IDIQ contracts, right? Well, yes, your honor. In fact, we're moving toward more and more every— So how could one additional contract do a cognizable injury to your client? I'm sorry, can you— I'm not sure what you mean. How could the grant of one additional IDIQ contract injure your client? I'm not talking about the grant of an contract here. I'm talking about— What's the injury then? The injury is the fact that we are dealing with an unfair competition. We have increased likelihood of a person's literal spouse's company getting awards under a massive Navy contract. And again, if you look at Weeks Marine, those facts are very similar to this. And in Weeks Marine, you were even guaranteed a minimum. There is no minimum here. You can be on Seaport as a small business, as many, many small businesses are, and never see a dollar because those dollars are unfairly being awarded under an OCI. And as soon as that OCI is identified, we just modify the solicitation, the contract. If the agency is allowed to go back and make modifications to an IDIQ contract, that to me is— that is akin to making solicitation changes. You're affecting the impact of competition. I have a question regarding Count 4. Sure. Wouldn't you say that Count 4 involves the FASA, F-A-S-A, and that there is no judicial review authority for this court for those particular type of orders? Your Honor, we have not once called out and attacked a specific task order award here. And again, I think if the agency had made one task order award— Count 4 relates to task orders, correct? It relates to the idea that— It's your count. It's your complaint. Yes, it relates to the idea that— Does it relate to task orders? To me, it all relates back to the IDIQ. I mean, that is what the agency is tampered with. That is where the unfair competition lies. So naturally, it's an IDIQ. There are task orders awarded under it. We've not attacked a single one of those. And again, I don't have an issue with the legality of that if you're not considering the massive underlying IDIQ modifications that were improper and the fact that there's an underlying OCI. The OCI has nothing to do with one task order. There's been a lot of awards, and there's a lot of potential future awards. What does Count 4, in your view, deal with? To me, it deals with the fact that the competition has been unfairly skewed. To me, that is exactly what it points to. Competition for task orders? For all future task orders, which is, yes, the nature of an IDIQ. You can't talk about an IDIQ and not mention the word task order. But I don't think it's ever been any jurisdictional intent for somebody to say, because the word task order is mentioned, naturally, in the context of an IDIQ, that automatically fassibars it. I don't think that's ever been anyone's intent. You're into your rebuttal time. You want to save it? Please. Thank you, Your Honor. Thank you. Mr. Angelof. Good morning, Your Honors, and may it please the Court. The focus of Island Creek's protest is a change in the procurement rules instituted by a January 2024 mass modification. But that modification has been permanently suspended. They're saying that awards are still being made under the modification. Is there anything in the record to establish that? No, Your Honor. I don't believe that's the case. The modification modified the original rule of one firm gets one prime contract, and they made an exception for joint ventures with the mentor-protege agreement. And as we see in the reply at page 24, Island Creek's reply, that expanded eligibility for other companies to hold IDIQ contracts, which is the basis of their complaint here. But that modification has been suspended, and there's no reasonable expectation that that modification will recur. And certainly with the rescission of that modification, the alleged bills that flow from that have also been permanently eradicated. So under binding Supreme Court precedent, this case is moot, and this Court should affirm the dismissal on mootness grounds. Is it moot in full, including count four? So count four brings up a separate can of worms, as it were, and that is the issue of the task order bar. Count four involves an organizational conflict of interest, but the way that Island Creek alleges that OCI manifests itself is through the allegedly unlawful award of task orders. And because it is in connection with task orders, it's clearly barred by FAFSA. Indeed, Island Creek, this is not in the record because it happened after the close of briefing, but Island Creek has brought a FAFSA claim in GAO based upon an organizational conflict of interest. And in December 2025, the GAO dismissed that claim on the merits, finding that there was no OCI that tampered with the award of task orders. Does that mean we have no jurisdiction over count four? There's no jurisdiction over any of these counts, including count four, because it's undeniably in connection with the award of task orders. There's no way for Island Creek to complain about an organizational conflict of interest without complaining that it's interfering with their ability to win task orders. In fact, Council essentially conceded as much just a moment ago. This count undeniably is in connection with task orders and falls very comfortably within the task order bar. But if we agree with you, would you have us affirm on the alternative grounds that everything is moot, or would you have us affirm, I think, the trial court dismiss for lack of standing? Well, Your Honor, certainly perhaps it may be helpful for the trial court to have clarity that definitively awardees are not disappointed bidders under the standing rules. That may provide some at the trial court. So I won't tell this court which route to choose. The important part is that we are evaluating a trial court judgment, and all roads here lead to affirming that judgment, whether it's for standing, mootness, or lack of jurisdiction. Could you address the loophole argument, which if I understand it seems to be, if I am an actual offeror for an IDIQ, I become an awardee, I get what I ask for, but subsequently there's an OCI, a real conflict of interest, that skews the entire competition for task orders. I can't bring a pre-award protest, but apparently I can't bring a post-award protest either, and there's the task order FASA bar. That seems like a massive loophole. What is someone in their position supposed to do, or do you just concede that loophole exists? No, Your Honor, we wouldn't concede that loophole exists. Before we even get to why not, if there is a loophole, that's really for Congress to close. It wouldn't be for this court to close. 1431, the statute's clear. The FASA bar, the statute's clear. So if there are loopholes involved, it would be for Congress to close. But even if there were a loophole, I should say, there is no loophole, because someone in Island Creek can do exactly what they've already done. They note in their brief that they brought a CDA claim based upon the administration of their own contract. We also see that they've brought a task order, they've challenged a task order in GAO. There is no loophole, because someone in Island Creek's position has alternative avenues to relief and indeed has pursued those alternative avenues for relief. But at the end of the day, an awardee, Island Creek got what they wanted here. They bid for a seaport IDIQ contract, and that's what they received. So there's really no loophole for them insofar as, I didn't get what I wanted. That's just not the case. They bid on a seaport IDIQ contract, and that's exactly what they received in January 2019. And so based upon the fact that they got exactly what they wanted, there really is no loophole that is causing some sort of unmitigated harm to them with no avenue for relief. Because Island Creek is an awardee, they are not an actual or prospective offeror. They are not disappointed bidders, which is how percipient in its en banc decision framed the standing analysis in the context of disappointed bidders. So even if this Court finds that this case is not moot and that there's jurisdiction, there's still the very difficult challenge that Island Creek cannot overcome on the issue of standing. Island Creek simply is not an interested party. They are an awardee. And so for this reason, this Court could also affirm. FASA applicable here under count four? The FASA bar is clearly implicated here in count four because there's no way for Island Creek to challenge an OCI without directly challenging the task orders. We know that the case because of what they alleged in their complaint, which is OCI is manifesting itself through the award of task orders. They specifically mentioned two task orders, PMA-209 and PMA-263. And then it basically mirrors the exact allegations they bring in the GAO complaint or GAO petition. And in that GAO petition, Island Creek is very specific that we're bringing this under the FASA statute. They basically did the same thing in the trial court. They just omitted the fact that they're bringing it under the FASA statute. But of course, it's clear that these implicate the task orders. These are in connection with the task orders to use the language in the FASA statute. And for that reason, this Court has no jurisdiction, or the trial court has no jurisdiction, and this Court should affirm. So again, there's multiple avenues that this Court can take to affirm the decision of the trial court. Nearly all counts of this complaint are moot because the modification that's at the heart of their claim has been suspended. So to be clear, back to count four, and you're saying that there's no jurisdiction, you mean there's no subject matter jurisdiction? That's right, Your Honor. I do believe that the FASA statute is a subject matter stripping statute. Because these are in connection with the award of task orders, there's no jurisdiction for the trial court to hear those claims. Island Creek should do what it's already done, which is go to and protest these awards of task orders. So what do you understand count four to be saying? I had read count four as saying this organizational conflict of interest led to the modification to the eligibility standard. So there are, as I read count four, they allege that Navy did not take the appropriate steps to mitigate an organizational conflict of interest. And we see that through the illegal... But what's the consequence of the organizational conflict of interest? Was this amendment to the qualification standards? Exactly right. As I read it, there are two kind of outgrowths of that failure. One is the modification, which we've established has been rescinded. And the other is that, oh no, now Island Creek is going to lose task orders because of this OCI. It's going to go to other task orders. And they specifically mentioned PMA 209 and PMA 263. And so that latter part of count four is just clearly in connection with the award of task orders. I mean, at this point, Island Creek's an awardee. The only way that an organizational conflict of interest could impact Island Creek, a contract holder, would be through task orders. I mean, that's the only way that an OCI, which of course we would argue doesn't exist, but the only way that OCI could impact Island Creek would be for them to say, I'm not getting the task orders I should get because of the OCI. And in fact, that's exactly what they said at GAO. They were just perhaps a little bit more careful in the trial court to avoid that language. But at the end of the day, the OCI relates directly to the award or the non-award of task orders. So again, that all comes back to the court not having jurisdiction under FAFSA for count four. Part of the relief they're asking for is an investigation into the conflict. Does that have anything to do with mootness or standing? Well, an investigation into the conflict in order for them to more fairly compete for task orders. I think no matter how we cut count four, it's all about an ability to more fairly compete for task orders down the road. And I believe one of the other reliefs that they're seeking for is for this husband to recuse himself. We see this at Appendix 361. They're requesting that the husband, who's at the center of this OCI, recuse himself from certain, I'm sorry, from the award of future task order procurements. So they're asking this individual to please step down from the award of other task orders because of an OCI. Award of task orders to whom? I'm just trying to understand how the organizational conflict of interest affects the award of task orders now that the qualifications have been revised. What's the theory? Well, because an individual at the heart of this OCI allegedly will still take steps to award the task orders to the folks that he wants to get preferential treatment to that still are contract holders under the old rules. So he became qualified under the old rule. Is that the idea? That's right. There was an opportunity in which the protege of this company was going to slip into the IDIQ contract under the exception to the one contract, one company, one contract rule. That company is no longer able to do so because of rescission of the rule. But that company that this gentleman is going to get preferential treatment to, they're still a prime contract holder, even though their protege can no longer slip in through the exception with the modification. By the way, Your Honor, this modification was issued years after the wife of this gentleman left that company. And not to mention the fact this gentleman has himself retired from the Navy. So Count 4 is also moot for separate reasons that are not in the record. Again, all this to show that there are just three or four or five different ways we can affirm the trial court's decision. At the end of the day, Your Honor, though, there's no jurisdiction clearly for Count 4. Mootness for 1, 2, 3, and 5. But as for all counts, Eileen Creek is not an interested party. And for that reason, this court should affirm the decision to the trial court. Thank you, Your Honors. Thank you. So, Your Honors, I want to address a couple things that counsel said, one of which right off the bat that Eileen Creek got what it wanted. Eileen Creek bid and was awarded, went through the entire process, expensive, all these small businesses did so, got on this contract, and what it bid was a fair and equal competition. What it bid was a contract, as counsel himself said, with one contract per company. What it bid was the terms as they were written. What it bid was a competition that was not going to be skewed by someone's spousal relationship. Eileen Creek did not get what it wanted here. And by counsel's very definition here, I don't see any situation, if we accept this standard the way counsel has... What's the evidence in the record that your client is competing with Precise for task orders? There have been task orders that my client has competed with Precise. What does the record say about that? Is that an allegation and a complaint that you're competing with them for task orders? Well, Your Honor, as we've discussed, we have to be so delicate here not to address specific task orders, yet we're being penalized in the same breath that we can't... Your theory is that you're injured because there's an organizational conflict of interest which adversely affects the award of task orders. And I'm just asking you, is there any evidence that you're competing with Precise for task orders? Yes, Your Honor. There is evidence in the record. We give examples of task orders that were awarded. We did, as counsel brought up, we went to GAO. And yes, we brought a CDA claim. We went to GAO. That's my job is to... Just tell me where. Where do I find that you're competing for task orders with Precise? I mean, it is in the record, Your Honor. I don't know exactly how to... You're supposed to know the record, you know? I know the record. I know that our client has bid against Precise. You can't show us where. I mean, I would be happy to do so with some time to find it. I'm sorry. My client and... I think we're out of time. Thank you.